TRUDEAU v FISHER BODY DIVISION, GENERAL MOTORS
CORPORATION

Docket No. 94039. Submitted October 21, 1987, at Lansing. Decided
    April 18, 1988.

Jean Trudeau began work for Fisher Body Division, General
    Motors Corporation in 1972. In April, 1982, her employment
    was terminated because of falsification of certain benefit re-
    quest records. She was reinstated in August, 1982. In March,
    1984, she was again terminated, this time for being absent
    without reasonable cause. She was subsequently reinstated as a
    result of grievance proceedings. Trudeau brought an action for
    intentional infliction of emotional distress in Ingham Circuit
    Court against Fisher Body based on the two discharges and the
    events which led to the March, 1984, discharge. Plaintiff al-
    leged that she had informed her supervisor that she would be
    absent, that he had indicated that he would see her on the
    following workday, that when she returned to work her super-
    visor had suggested a sexual assignation with her, that she
    refused and that she was thereafter discharged from her em-
    ployment. Defendant moved for summary disposition on the
    basis that the court lacked jurisdiction because of federal
    preemption and the basis that, as a matter of law, plaintiff had
    failed to state a valid claim of intentional infliction of emo-
    tional distress. The trial court, Carolyn Stell, J., denied defen-
    dant's motion. Defendant appealed by leave granted.

The Court of Appeals held:

1. The federal scheme relating to the regulation of labor
    relations is counterbalanced by the legitimate and substantial
    interest of the states in protecting their citizens from inten-
    tional infliction of emotional distress. Since resolution of the
    complained-of tort falls outside the scope of the collective
    bargaining agreement and resolution does not require looking

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 2003, 2004; Fright, Shock,
    and Mental Disturbance § 44.5.

Liability of employer, supervisor, or manager for intentionally or
    recklessly causing employee emotional distress. 52 ALR4th 853.

On-the-job sexual harassment as violation of state civil rights law.
    18 ALR4th 328.

to any provision of that agreement, the jurisdiction of the Michigan circuit court to consider the claim of intentional infliction of emotional distress is not preempted by federal labor law.

2. An actionable claim for intentional infliction of emotional distress requires a showing of conduct which is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. While the alleged invitation for sexual assignation may have been repulsive, such an overture in an adult workplace cannot be said to be the kind of outrageous conduct necessary to sustain an action for intentional infliction of emotional distress.

Reversed.

1. Labor Relations — Preemption — Intentional Infliction of Emotional Distress.

A state action for intentional infliction of emotional distress by a union employee against her employer for damages arising out of an alleged improper advance made by supervisory personnel and discharge from employment when that advance was rebuffed is not preempted by federal labor legislation.

2. Torts — Intentional Infliction of Emotional Distress — Offer of Sexual Assignation.

A suggestion by an employee's supervisor that she engage in a sexual assignation with the supervisor, while a rank overture which is repulsive, is not so outrageous in character and so extreme in degree as to go beyond all possible bounds, of decency and to be regarded as atrocious and utterly intolerable in a civilized community; accordingly, the making of such an overture will not sustain an actionable claim for intentional infliction of emotional distress.

*Sablich & Clinton, P.C.* (by *Tonya A. Fedewa*), for plaintiff.

*Foster, Swift, Collins & Coey, P.C.* (by *John L. Collins* and *William R. Schulz*), for defendant.

Before: M. J. Kelly, P.J., and Doctoroff and J. T. Corden,* JJ.

M. J. Kelly, P.J. Defendant appeals by leave

---

* Circuit judge, sitting on the Court of Appeals by assignment.

granted the June 30, 1986, order denying defendant's motion for summary disposition. We reverse.

Plaintiff is an employee of defendant. She began working at Fisher Body on May 18, 1972. Since she was hired she has been off work several times either because of layoffs or due to sickness or injury. She has also been discharged on two occasions. In April of 1982 she was charged with falsification of employment records because she applied for sickness and accident benefits for a period of time for which she had already collected unemployment benefits. This charge resulted in her termination on April 16, 1982. Subsequently, she was reinstated on August 25, 1982, without pay for lost time. On March 6, 1984, plaintiff was again discharged, this time for being absent without reasonable cause. After following the grievance procedure, plaintiff was reinstated on July 28, 1984.

The two discharges and the events that led to her discharge in March of 1984 are the basis for plaintiff's tort claim of intentional infliction of emotional distress. On the day plaintiff was absent, March 2, 1984, she had been summoned to appear in court. Plaintiff had informed her supervisor of the summons the day after she received it. She was told to report to work at the regularly scheduled time, 6:30 A.M., and told that she would then be excused. Plaintiff overslept and did not report to work, but went straight to court. She phoned her supervisor sometime in the early afternoon. At that time, according to plaintiff's deposition, she told the supervisor that she was going to her doctor's in the afternoon and the supervisor then responded that he would see her on Monday.

Plaintiff stated in her deposition that the following conversation between her and her supervisor

took place on the following Monday, when plaintiff returned to work and turned in her physician's statement to her supervisor:

> He came over to me and stood next to me, and he goes, You know, Jean, he says, I'm 40 years old and I've never screwed a white woman. He says, I think it would feel kind of good. And I looked at him and I said, oh, yeah, Eldridge? Well, I'm 30— and I didn't say screwed, I said something else—a nigger and I don't intend on it.

The following day, March 6, 1984, plaintiff was told by her committeeman that her supervisor had been instructed to discharge her.

On March 28, 1984, plaintiff filed a one-count complaint alleging intentional infliction of emotional distress. Because plaintiff, due to her employment, is a member of the United Auto Workers, which has a collective bargaining agreement with defendant, defendant moved for summary disposition on the basis that plaintiff's claim was preempted by federal labor law. Defendant also argued that, as a matter of law, the conduct complained of was not so outrageous as to support plaintiff's claim.

Defendant's motion was brought pursuant to MCR 2.116(C)(10), defendant contending that there was no genuine issue of material fact and that defendant was entitled to judgment as a matter of law. The trial court denied defendant's motion, finding both that plaintiff pled a claim for intentional infliction of emotional distress and that such a claim was not preempted by federal labor law.

In this appeal defendant raises the same issues. Defendant first claims that plaintiff's claim is preempted by federal labor law. We agree with the trial court and hold that it is not.

The general rule on the doctrine of federal

preemption with regard to labor law was set forth in *San Diego Building Trades Council v Gorman,* 359 US 236, 244; 79 S Ct 773; 3 L Ed 2d 775 (1959):

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law.

However, in *Farmer v United Brotherhood of Carpenters & Joiners of America,* 430 US 290, 302; 97 S Ct 1056; 51 L Ed 2d 338 (1977), where plaintiff brought a claim of intentional infliction of emotional distress against his union, the Supreme Court highlighted restrictions placed on rigid application of the *Gorman* rule:

> Our cases indicate, however, that inflexible application of the doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme.

In allowing petitioner's claim, *Farmer* reasoned that, since "[n]o provision of the National Labor Relations Act protects the 'outrageous conduct' complained of" and since "[t]he State, on the other hand, has a substantial interest in protecting its citizens from the kind of abuse" complained of, preemption did not apply to the circumstances presented. *Id.* at 302.

The Court in *Farmer* concluded that any inter-

ference with the federal labor law scheme was counterbalanced by the state's legitimate and substantial interest in protecting its citizens from the kind of conduct complained of. And, in any event the state tort claim could be decided without regard to the underlying merits of the labor dispute.

Plaintiff's claim, as pled here, comes within the principles of *Farmer.* Plaintiff does not allege that the activity of defendant was in violation of the National Labor Relations Act. Rather, the tortious conduct complained of falls outside of the collective bargaining agreement and does not require this Court to engage in analysis of the terms of the collective bargaining agreement. Also, the state has a legitimate and substantial interest in protecting its citizens from the tort complained of. For these reasons, we find that plaintiff's claim was not preempted by federal labor laws.

However, we disagree with the trial court in its conclusion that defendant's conduct would support a claim for intentional infliction of emotional distress.

The Supreme Court in *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 603; 374 NW2d 905 (1985), in judging a claim held that, for intentional infliction of emotional distress, the following language from the Restatement Torts, 2d, § 46, comment d, pp 72-73, should be used as a gauge for what constitutes the extreme and outrageous conduct which is necessary to support an actionable claim for intentional infliction of emotional distress:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation

of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

The basis for plaintiff's claim of extreme and outrageous conduct is the statement which she alleges her supervisor made to her and her subsequent discharge when she refused to accede to his suggestion. Plaintiff's deposition reveals that the complained of statement was: "You know, Jean, . . . I'm 40 years old and I've never screwed a white woman. . . . I think it would feel kind of good."

Although by any standard such a rank overture is repulsive, we do not find that in an adult workplace such a statement is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." For this reason we reverse the decision of the trial court and dismiss plaintiff's claim, finding that as a matter of law defendant is entitled to judgment.

Reversed.