Kyle ANDREWS, John Meehan, and
J. Stephen Stout, Plaintiffs–
Appellants,

v.

**PRUDENTIAL SECURITIES, INCORPORATED, Defendant–Appellee.**

No. 97–1746.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 24, 1998.

Decided Nov. 2, 1998.

## OPINION

KENNEDY, Circuit Judge.

Plaintiffs, Kyle Andrews, John Meehan, and J. Stephen Stout, appeal the District Court's order granting summary judgment on behalf of the defendant, Prudential Securities, in this diversity action alleging that defendant filed false Uniform Termination Notice of Securities Industry Registration forms ("U–5 forms") with the National Association of Securities Dealers. For the reasons that follow, we **AFFIRM** the judgment of the District Court.

## I.

### A. Factual Background

The plaintiffs' suit against Prudential Securities, Inc. ("Prudential") arises out of a requirement imposed upon brokerage firms by the National Association of Securities Dealers ("NASD"). When a brokerage firm terminates the employment of a broker, the firm is required to file with the NASD a Uniform Notice of Termination for Securities Industry Registration. *See* NASD By-laws, Art. IV, § 3(a). In the industry, the form is commonly referred to as the "U–5" form. Item 13 of the U–5 form requires a firm to make the following disclosure:

WHILE EMPLOYED BY OR ASSOCIATED WITH YOUR FIRM, WAS THE INDIVIDUAL:

. . . .

B. the subject of an investment-related, consumer-initiated complaint that:

(1) alleged compensatory damages of $10,000 or more, fraud, or wrongful taking of property?

(2) was settled or decided against the individual for $5,000 or more, or found fraud, or the wrongful taking of property?

*See* Ex. 1 to Prudential's Motion for Summary Judgment. Firms are additionally required to file an amended U–5 after a broker departs if it learns of facts or circumstances which would require an affirmative response to Item 13. *See* NASD By–Laws, Art. IV,

Kyle Andrews, Flint, MI, pro se.

David M. Deutsch (argued), Dayton, OH, for Plaintiffs–Appellants.

John Meehan, Flint, MI, pro se.

J. Stephen Stout (briefed), Flint, MI, pro se.

Jack J. Mazzara (argued and briefed), Dennis K. Egan (briefed), Egan & Mazzara, Detroit, MI, for Defendant–Appellee.

Before: KENNEDY, WELLFORD, and BOGGS, Circuit Judges.

§ 3(b). As explained by the NASD, the required disclosure enables the NASD "to detect violations and subsequently sanction persons for violations of the NASD's rules and other applicable federal statutes and regulations." Further, "[f]ailure to provide this information may ... subject members of the investing public to repeated misconduct and may deprive member firms of the ability to make informed hiring decisions." *See* NASD Notices to Members, No. 88–67 at p. 291. The NASD cautions that failure to provide complete and accurate information in a U–5 form may subject firms to administrative, civil, and even criminal penalties. *Id.*

Kyle Andrews, John Meehan, and J. Stephen Stout, the plaintiffs in the instant action, were employed with Prudential as registered representatives when the Securities and Exchange Commission ("SEC") filed suit against Prudential for misconduct in connection with the sale of interests in limited partnerships. A settlement agreement between the SEC and Prudential resulted in a claims resolution process during which several of Prudential's customers filed claims naming plaintiffs as their registered representatives for their purchases of the limited partnerships. The submitted claims were all settled for various amounts over $5,000.

At the time the customer claims were submitted, plaintiffs were no longer working for Prudential; Andrews, Stout, and Meehan departed Prudential in 1989 to work for another brokerage firm. Despite their cessation of employment with Prudential, NASD By-laws required Prudential to file amended U–5 forms if it believed that Item 13 required an amended response. Accordingly, Prudential filed amended forms on December 2, 1994 (plaintiff Meehan), May 24, 1995 (plaintiff Stout), and June 22, 1995 (plaintiff Andrews).

**B. U–5 Amendment: Plaintiff Andrews[1]**

On June 22, 1995, Prudential filed an amended U–5 form for Andrews disclosing

three complaints filed against Andrews. The amended U–5 form reads as follows:

... clients(s) submitted claim form(s) to the Claims Resolution Process relating to limited partnership purchase(s) during the period: 7/87–10/88; 2/88–4/88; 9/86–1/89. [Andrews] was the broker of record at the time of the purchase(s). No damages were alleged but the amount(s) of actual loss (out-of-pocket) is/are approximately $18,017; $14,478; $14,853.

Settlement(s) with the ... client(s) has/have been reached in the Claims Resolution Process. The dollar amount(s) of the settlements(s) is/are approximately $15,990; $14,670; $31,605.

This matter resulted from the unprecedented, unsolicited mailing of claim forms by Prudential to over 340,000 investors who purchased Limited Partnerships through Prudential from January 1, 1980 to January 1, 1991. The ... client(s) submitted claim form(s) in response to this mailing ...

*See* Ex. 2 to Prudential's Motion for Summary Judgment.

A review of the customer complaints that formed the basis for the U–5 amendment reveals that the complaints alleged not only unhappiness with the purchases of the limited partnership but also specific dissatisfaction with the representations made by Andrews concerning the partnerships.

*See* Ex. 7 to Prudential's Motion for Summary Judgment.

**C. U–5 Amendment: Plaintiff Stout**

On May 24, 1995, Prudential filed an amendment to the U–5 form filed upon Stout's departure from the firm. The amendment disclosed two complaints brought by consumers during the Claims Resolution Process. The language of the Stout Amendment resembled the Andrews Amendment except for the customer names, out-of-pocket losses and settlement amounts. Like the

---

1. In response to defendant's motion to dismiss the plaintiffs' amended complaint, plaintiff Meehan's defamation claim was dismissed by the District Court on January 6, 1997, based on Michigan's one-year statute of limitations for defamation actions. Because plaintiffs' notice of appeal indicates that they appealed only from the District Court's June 4, 1997 order granting summary judgment on behalf of Prudential, we do not review the District Court's dismissal of Meehan's defamation claim pursuant to the statute of limitations.

complaints filed by customers of Andrews, the complaints filed by several of Stout's clients alleged specific dissatisfaction with Stout's representations of the partnerships. Also like the Andrews complaints, Stout's customers complained that the partnerships were not suitable to their financial situations and that they were not fully informed regarding the nature of the partnerships or of the risky nature of the limited partnerships.

### D.  Procedural History

As a result of Prudential's filing of the amended U–5 forms, plaintiffs, on March 22, 1996, filed a complaint against Prudential asserting seven counts: (1) fraud/misrepresentation; (2) breach of fiduciary duty and violation of NASD and New York Stock Exchange rules; (3) defamation; (4) intentional infliction of emotional distress; (5) tortious interference with business relations; (6) gross negligence; and (7) violation of due process. In response to a motion to dismiss the complaint, the District Court dismissed the fraud, breach of fiduciary duty, tortious interference, and due process counts. However, the court granted plaintiffs leave to file an amended complaint in order to plead the defamation count with specificity and to identify the U–5 forms upon which they based their allegations.[2]

Following the plaintiffs' filing of an amended complaint on October 1, 1996,[3] the District Court dismissed Meehan's defamation claim on statute of limitations grounds. Thus, the claims which remained to be litigated included the defamation claims of Andrews and Stout and all of the plaintiffs' claims for intentional infliction of emotional distress and gross negligence.

Following the close of discovery, Prudential filed a motion for summary judgment on the remaining three claims. On June 4, 1997, the District Court granted Prudential's motion. Regarding the defamation claims, the court held that the U–5 forms were protected by a qualified privilege which could be defeated only upon a showing of actual

malice. Because plaintiffs failed to adduce any evidence that the reports were published with actual malice, the court held that the defamation claims could not withstand Prudential's motion. Alternatively, the court held that the defamation claims could not be maintained because the U–5 forms contained only true statements. Regarding plaintiffs' causes of action for intentional infliction of emotional distress, the court concluded that the filing of the U–5s did not constitute extreme and outrageous conduct. Lastly, the court dismissed the gross negligence claims because, in its view, such a cause of action was not viable in Michigan under the facts alleged and, alternatively, because defendant's actions did not amount to gross negligence.

Plaintiffs now appeal from the order granting summary judgment on behalf of Prudential.

## II.

This Court's review of a grant of summary judgment is *de novo;* we use the same test as used by the district court. *See Brooks v. American Broadcasting Cos.,* 932 F.2d 495, 500 (6th Cir.1991). In reviewing summary judgment motions, courts must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Under Fed.R.Civ.P. 56(c), summary judgment is proper if the evidence " 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law.' " *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988)(quoting Fed.R.Civ.P. 56(c)).

## III.

### A.  Defamation

Plaintiffs assert that there is an issue of fact as to whether the statements on the

---

**2.**  Plaintiffs' original complaint did not identify the U–5 forms at issue.

**3.**  Because plaintiffs included the previously dismissed counts in their amended complaint, the District Court once again dismissed those counts in its second order.

U–5 form are true and thus the District Court erred in granting summary judgment on behalf of Prudential on their defamation claims. Under Michigan law,[4] a plaintiff must establish each of the following four elements to maintain a defamation action: "(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm, (defamation per se) or the existence of special harm caused by the publication (defamation per quod)." *DeCoe v. General Motors Corp.*, 32 F.3d 212, 217 (6th Cir.1994)(quoting *New Franklin Enters. v. Sabo*, 192 Mich.App. 219, 480 N.W.2d 326, 328 (1991)); *Gonyea v. Motor Parts Fed. Credit Union*, 192 Mich.App. 74, 480 N.W.2d 297, 299 (1991).

As is evident by the first requirement of falsity, truth is a complete defense to a defamation action. *See Baggs v. Eagle–Picher Indus., Inc.*, 957 F.2d 268, 273 (6th Cir.1992)(citing *Cochrane v. Wittbold*, 359 Mich. 402, 102 N.W.2d 459, 463 (1960)); *Porter v. Royal Oak*, 214 Mich.App. 478, 542 N.W.2d 905, 909 (1995), *appeal denied*, 453 Mich. 977, 557 N.W.2d 315 (1996). We conclude that the District Court properly granted summary judgement on behalf of Prudential on the basis that plaintiffs could not adduce any evidence that the U–5 forms submitted by Prudential were substantively false. Plaintiffs do not allege that they were not the brokers of record at the time of the limited partnership purchases, that the amount of actual losses reported was inaccurate, that the dollar amounts of the settlements lacked a factual basis, or that the claims did not, as reported, result from the mailings of claim forms to investors who purchased limited partnerships between 1980 and 1991. Thus, no statement contained within any of the U–5 forms is false and no defamatory statement was ever uttered.

Plaintiffs, however, allege that the defamatory statement was made when defendant checked affirmatively section (2) of following question asked on the U–5 form:

WHILE EMPLOYED BY OR ASSOCIATED WITH YOUR FIRM, WAS THE INDIVIDUAL:

. . . .

B.  the subject of an investment-related, *consumer-initiated complaint* that:
(1) alleged compensatory damages of $10,000 or more, fraud, or wrongful taking of property?
(2) was settled or decided against the individual for $5,000 or more, or found fraud, or the wrongful taking of property?

*See* Item 13 of U–5 Form (emphasis added). Plaintiffs claim Prudential's answer of "Yes" to section (2) of that question on the plaintiffs' amended U–5 forms was defamatory because the claims were not initiated by consumers but were filed in response to Prudential's solicitation and, further, that the clients' submissions were not complaints but merely claim forms. We decline to adopt plaintiffs' narrow interpretation of "consumer-initiated complaint" for several reasons. First, while the primary purpose of Prudential's solicitation of claims was to compensate clients who had been harmed in connection with the purchase of limited partnerships, the information returned by several clients in connection with the solicitation revealed that not only had clients been financially harmed by Prudential's sales of limited partnerships but also that brokerage representatives engaged in conduct which may have amounted to misrepresentation or suitability complaints. The U–5 form enables the NASD "to detect violations and subsequently sanction persons for violations of the NASD's rules and other applicable federal statutes and regulations." *See* NASD Notices to Members, No. 88–67 at p. 291. Thus, the responses to defendant's solicitation of claims initiated discussion and disclosed claims of alleged improper conduct of individual brokers. Prudential furthered the NASD's purpose of the U–5 form filing requirement by informing the NASD of the

---

4.  Presented with state law claims involving diverse parties and, therefore, a conflicts of law question, the District Court held that Michigan law applied. Neither party contests that holding on appeal.

conduct brought to its attention. The complaints were no less consumer-initiated simply because they followed the SEC investigation and general solicitation by Prudential. We, thus, agree with the District Court's conclusion that an NASD member was required to report a broker against whom such a complaint has been filed even though the complaint was also against the brokerage firm and was made in response to a solicitation resulting from litigation against the brokerage firm.

To the extent that the affirmative answer to the "consumer-initiated complaint" inquiry is claimed to be in any way misleading, the remainder of the U–5 explained the process by which Prudential learned of the plaintiffs' conduct so that the NASD could independently evaluate whether the plaintiffs were the subject of an investment-related, consumer-initiated complaint that was settled against the individual for $5,000 or more, or found fraud, or the wrongful taking of property.[5]

For these reasons, we cannot conclude that plaintiffs could carry their burden of establishing that any statements in the U–5 forms were false.[6] The District Court therefore properly granted summary judgment on plaintiffs' defamation claims.[7]

### B. Intentional Infliction of Emotional Distress

While the Michigan Supreme Court has not yet recognized the tort of intentional infliction of emotional distress, *see Roberts v.*

*Auto–Owners Ins. Co.*, 422 Mich. 594, 374 N.W.2d 905, 906 (1985), the Michigan Court of Appeals has recognized such a tort, and we have assumed that the Michigan Supreme Court would do so too under appropriate circumstances and have therefore permitted such claims to proceed. *See DeCoe v. General Motors Corp.*, 32 F.3d 212, 218 (6th Cir. 1994).

▮ To establish a *prima facie* case of intentional infliction of emotional distress, a plaintiff must establish four elements: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *See Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 777 (6th Cir.1996) (citing *Roberts*, 374 N.W.2d at 908). The outrageous conduct requirement is satisfied only by conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roberts*, 374 N.W.2d at 908 (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). Liability arises, moreover, only "where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* at 908–09.

In light of our conclusion that plaintiffs' defamation claims may not be maintained because the U–5 forms were true, plaintiffs' claims for intentional infliction of emotional distress must also fail; the truthful publication of and accurate representations of the

---

**5.** In his unrebutted affidavit, Hugh H. Makens, former Director of the Corporation and Securities Bureau of the State of Michigan, past president of the North American Securities Administrators Association, and member of the Legal Advisory Board to the NASD, attested that Prudential "had the obligation and the responsibility under applicable NASD rules to file the amended Form U–5s based on the statements of the customers in the Claim Process Submission forms." Makens further stated that the U–5 reports "fairly represent the customer complaints reflected in the corresponding Claim Process Submission forms." Thus, in his opinion, the fact that the consumer complaints were submitted in response to Prudential's solicitation did not absolve Prudential of its obligation of amending the U–5 forms and did not render false any of the statements therein.

**6.** At oral argument, plaintiffs argued for the first time that the answer to section (2) of Item 13 was false because no action found fraud or the wrongful taking of property. In asserting this argument, however, plaintiffs misread section (2). That section asks not whether a complaint was settled or decided against the individual for $5,000 or more, *AND* found fraud, or the wrongful taking of property. Rather, the section asks whether a complaint was settled or decided against the individual for $5,000 or more, *OR* found fraud, or the wrongful taking of property.

**7.** Because truth is an absolute defense to a defamation claim and because we have concluded that the statements in the U–5 forms are true, we do not address the alternative argument that the statements were protected by a qualified privilege.

clients' complaints cannot constitute outrageous conduct.

### C. Gross Negligence

Lastly, plaintiffs contend that the District Court erred in granting summary judgment on their claim against Prudential for gross negligence. Essentially, this claim alleges that Prudential's act of filing the U–5 forms with knowledge that they were false amounted to gross negligence. In light of our prior discussion, we cannot conclude that Prudential breached any duty, if any were owed, to the plaintiffs. Further, we cannot conclude that Prudential acted recklessly. *See Jennings v. Southwood,* 446 Mich. 125, 521 N.W.2d 230, 235 (1994)(defining gross negligence). The District Court, therefore, properly dismissed this claim as well.

### IV.

For the foregoing reasons, the judgement of the District Court is **AFFIRMED.**