Lisa C. SELPH, Plaintiff,

v.

**GOTTLIEB'S FINANCIAL SERVICES, INC., a Georgia corporation, Defendant.**

No. 1:98–CV–170.

United States District Court, W.D. Michigan, Southern Division.

Jan. 12, 1999.

---

David L. Harrison, Tolley, VandenBosch, Walton, Korolewicz, et al., Grand Rapids, MI, for Lisa C. Selph, plaintiff.

Stephen S. Muhich, David George Hagens, Dykema Gossett PLLC, Grand Rapids, MI, for Gottlieb's Financial Services, Inc., a Georgia corporation, defendant.

## *OPINION*

QUIST, District Judge.

In this case, Plaintiff, Lisa Selph ("Selph"), has sued her former employer, Gottlieb's Financial Services, Inc. ("Gottlieb's"), under the Michigan Elliott–Larsen Civil Rights Act ("Elliott–Larsen Act"), M.C.L. §§ 37.2101 to .2804, alleging hostile work environment sexual harassment. Selph also alleges claims for constructive discharge, breach of employment contract, intentional infliction of emotional distress, and negligent infliction of emotional distress. Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.[1] Now before the Court is Gottlieb's motion for summary judgment.

### *Facts*

On or about August 28, 1995, Selph was hired by Gottlieb's as a clerical worker. At the time Selph applied for employment with Gottlieb's, she signed a Gottlieb's form employment application, which provided:

> I further understand and agree that if I am hired by Gottlieb's Financial Services that my employment will always be on an "at-will" basis, and may be terminated, either by me or by Gottlieb's Financial Services at any time, with or without notice or cause. I understand that the "at-will" nature of my employment may not be modified by any handbook, policy or statement, unless I am covered by a written agreement signed by myself and the President of Gottlieb's Financial Services which specifically describes its intent to alter the "at-will" relationship.

(Application for Employment at 4, Def.'s Br. Ex. A.) At the time Selph began her employment with Gottlieb's, she signed a Confiden-

tiality Agreement and acknowledged receipt of Gottlieb's employee handbook entitled "Standards of Conduct." The Confidentiality Agreement provided that Selph "acknowledge[d] and agree[d] that [her] employment [was] 'at will.'" (Confidentiality Agreement ¶ 8(e), Def.'s Br.Ex. B.) Similarly, the Standards of Conduct provided that they were "not, and should not be construed as, an implied or express contract of employment, or any other contract," and that Selph's employment with Gottlieb's was "at-will." (Standards of Conduct, Def.'s Br.Ex. C.)

On Thursday, February 13, 1997, Selph and a co-worker, Gail Davis ("Davis"), informed their supervisor, Joyce Gardner ("Gardner"), that Kevin Jernigan ("Jernigan"), a recently hired employee, had committed several acts over the course of the previous seven or eight days which they perceived as sexual harassment. Specifically, Selph complained that Jernigan had left notes on her desk, called her at home, and kissed her.[2]

According to Selph, Jernigan did not engage in any harassing conduct the following day, Friday February 14, although he did give her "dirty looks." (Selph Dep. at 56–57, 61, attached to Def.'s Br.) During the weekend, because Selph was apparently distressed about her experience with Jernigan, Selph's father told her that she could not continue to work for Gottlieb's if Gottlieb's did not terminate or transfer Jernigan to a different department away from Selph. (*See* John Selph Dep. at 18, attached to Def.'s Br.) The following Monday morning when Selph arrived at work, she spoke with another supervisor, Marlene Willis ("Willis"), to find out if Gottlieb's intended to terminate Jernigan. When Willis informed Selph that she could not promise that Jernigan would be terminated, Selph left Willis' office and called her father. Soon thereafter, Selph's father arrived to take her home. Gottlieb's Human Resources Director, Sherry Simmons ("Sim-

---

**1.** Selph filed her original complaint in Kent County Circuit Court and Gottlieb's removed the case to this Court pursuant to 28 U.S.C. § 1441(a) on February 24, 1998.

**2.** In its motion, Gottlieb's attempted to show the steps that it took in response to Selph's complaint through unsigned written statements at-

tached to the affidavit of Sherry Simmons. As noted below, the written statements are hearsay and Gottlieb's has not shown that they are otherwise admissible under an exception to the hearsay rule. Therefore, the Court will not consider that evidence as part of the undisputed facts.

mons"), attempted to contact Selph at home to discuss the situation, but Selph's father refused to permit Simmons to speak with Selph. (*See* Simmons Aff. ¶ 6, Def.'s Br.)

### *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.* at 251, 106 S.Ct. at 2511 (citing *Schuylkill v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1871)).

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi*, 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### *Discussion*

### I. Elliott–Larsen Claim

Gottlieb's argues that it is entitled to summary judgment on Selph's sexual harassment claim because it took prompt and appropriate action in response to Selph's complaint. An employer that receives a complaint of sexual harassment may avoid liability "if it adequately investigated and took prompt and appropriate remedial action." *Downer v. Detroit Receiving Hosp.*, 191 Mich.App. 232, 234, 477 N.W.2d 146, 147–48 (1991).

Selph has not offered any evidence to rebut Gottlieb's evidence, but contends that the Court cannot grant summary judgment based upon the record before it because the statements attached to the Simmons affidavit, which provide the factual basis for Gottlieb's motion, are hearsay. Selph is correct that hearsay evidence must be disregarded by a court in deciding a motion for summary judgment. *See U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir.1997). Gottlieb's sought to introduce the factual basis for its motions through the Gardner, Hucks, and Willis written statements, which were attached to Simmons' affidavit. While that evidence, if presented in admissible form, would provide a strong basis for summary judgment, it cannot serve as the basis for summary judgment because it is hearsay, and Gottlieb's has not shown that the written statements are admissible under an exception to the hearsay rule. Therefore, a genuine issue of material fact remains with respect to Selph's Elliott–Larsen Act claim.

### II. Constructive Discharge

Selph contends in each of her claims in Counts I through IV that she was constructively discharged from her employment as a result of Jernigan's actions and Gottlieb's failure to investigate and take proper action against Jernigan. A constructive discharge occurs only "when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *LeGalley v. Bronson Community Schools*, 127 Mich.App. 482, 486, 339 N.W.2d 223, 225

(1983). In *Backer v. Wyeth–Ayerst Laboratories,* 949 F.Supp. 512 (W.D.Mich.1996), this Court stated that "[c]onstructive discharge is found 'in situations in which working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have been compelled to resign.'" *Id.* at 518–19 (quoting *Storch v. Beacon Hotel Corp.,* 788 F.Supp. 960, 965 (E.D.Mich.1992)). In *Backer,* similar to the one at bar, the plaintiff alleged discrimination under the Michigan Handicappers Civil Rights Act. This Court found that while the plaintiff had established a *prima facie* case of discrimination, she failed to allege sufficient aggravating circumstances to support a claim that she had been constructively discharged. *See id.* at 519.

■ Selph's constructive discharge claim in this case is predicated upon her sexual harassment claim. Although the Court has concluded that Gottlieb's hearsay evidence is insufficient to support summary judgment on the sexual harassment claim on the basis that Gottlieb's took prompt and appropriate action, the inadmissibility of the written statements does not present the same bar to summary judgment on the constructive discharge claim. The evidence, which includes admissions by Selph in her deposition, shows that by Friday, February 14, the day after Selph reported Jernigan's conduct to her supervisors, Jernigan had stopped engaging in the type of conduct which Selph perceived as sexual harassment. In fact, Jernigan did not engage in any conduct other than the so-called "dirty looks" after Selph complained to her supervisors.[3] In addition, Jernigan had no supervisory responsibility for Selph. The "dirty looks" cannot be considered sexual in nature and do not give rise to employment conditions which would have compelled a reasonable person in Selph's position to resign. At most, Selph was required to work for one day in the same department with an employee with whom she was not entirely comfortable. Selph admitted that she believed that Jernigan would not harass her after she reported his behavior to Gottlieb's because his behavior was "brought out into the light,"

and that she believed that Willis was looking out for Selph's "well-being." (Selph Dep. at 57, 62, Pl.'s Resp.Br.Ex. A.) Thus, the Court will grant summary judgment on Selph's claim under Counts I through IV that she was constructively discharged.

### III. Breach of Employment Contract

■ In Count II, Selph alleges that Gottlieb's breached an employment agreement based upon statements made in the Standards of Conduct that Gottlieb's would maintain a working environment free of sexual harassment and that it would investigate and take remedial action on reports of sexual harassment. As noted above, the Standards of Conduct contained an explicit notice which stated that the Standards of Conduct were not to be considered or construed as "an implied or express contract of employment" and that Selph's employment was "at-will." The Michigan Supreme Court has held that "provisions in a handbook will not create enforceable rights when the handbook expressly states that such provisions are not intended to create an employment contract." *Lytle v. Malady,* 458 Mich. 153, 579 N.W.2d 906, 913 (1998). In this case, the Standards of Conduct explicitly stated that they were not to be construed as contractual provisions or as creating a contract. Therefore, Selph is precluded from arguing that an employment contract existed, and Gottlieb's is entitled to judgment as a matter of law on Selph's breach of employment contract claim.

### IV. Intentional Infliction of Emotional Distress

Selph alleges a claim for intentional infliction of emotional distress in Count III based upon Jernigan's conduct and Gottlieb's alleged failure to investigate and take appropriate action. The Sixth Circuit recently addressed a claim for intentional infliction of emotional distress under Michigan law in *Andrews v. Prudential Securities, Inc.,* 160 F.3d 304 (6th Cir.1998). In *Andrews,* the court stated that while the Michigan Su-

---

**3.** There is no indication in the record that Gottlieb's knew about Jernigan's conduct prior to the time that Selph complained to her supervisors.

Therefore, Gottlieb's cannot be held accountable for circumstances of which it was unaware and which it did not expressly or implicitly authorize.

preme Court has not recognized the tort of intentional infliction of emotional distress, the Sixth Circuit has assumed in previous opinions that the Michigan Supreme Court would recognize the tort. *See id.* at 309. The *Andrews* court summarized the proof required to sustain a claim of intentional infliction of emotional distress as follows:

> To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must establish four elements: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. The outrageous conduct requirement is satisfied only by conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Liability arises, moreover, only "where the distress inflicted is so severe that no reasonable man could be expected to endure it."

*Id.* (citations omitted) (quoting *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 608–09, 374 N.W.2d 905, 908–09 (1985)).

■ The facts in the record before the Court fail to establish a claim of intentional infliction of emotional distress. With respect to Jernigan's conduct, Selph's claim fails because even if Jernigan's conduct rose to the level of outrageous conduct required to support an emotional distress claim, Gottlieb's could not be held vicariously liable because Jernigan's harassing conduct was not within the scope of his employment. *See Linebaugh v. Sheraton Mich. Corp.*, 198 Mich.App. 335, 343, 497 N.W.2d 585, 589 (1993) (holding that employer was not vicariously liable for the acts of the plaintiff's co-worker who drew a cartoon of himself engaged in a sexual act with the plaintiff).

■ Beyond the question of vicarious liability, Selph's claim also fails because Jernigan's conduct, which included leaving notes on Selph's desk [4], kissing her, brushing up against her, and placing a hand on her knee, was not so outrageous as to go beyond all

possible bounds of decency. Courts have found conduct much more extreme than that at issue in this case insufficient to support an emotional distress claim. In *Trudeau v. Fisher Body Division, General Motors Corp.*, 168 Mich.App. 14, 423 N.W.2d 592 (1988), the plaintiff alleged an emotional distress claim based upon a sexual proposition by a her supervisor, which the court described as "a rank overture" that was "repulsive," and her subsequent discharge from her employment. *See id.* at 19–20, 423 N.W.2d at 594. The court concluded that in the context of "an adult workplace," the supervisor's "statement [was not] 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* at 20, 423 N.W.2d at 594; *see also Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 777 (6th Cir.1996) (holding that the conduct of the plaintiff's co-worker in threatening her employment stability, applying pressure on her to engage in a non-business relationship, constantly calling and writing to her, and discussing his sexual fantasies about her with other employees was insufficient conduct to support an emotional distress claim). Therefore, summary judgment will be granted on Count III.

## IV. Negligent Infliction of Emotional Distress

In her last claim, Selph alleges that Gottlieb's is liable for negligent infliction of emotional distress. Gottlieb's contends that this claim should be dismissed because Michigan law does not recognize a claim for negligent infliction of emotional distress under the circumstances presented in this case and because even if such a claim were cognizable based upon the facts in this case, Selph cannot establish the elements of the claim.

■ Gottlieb's is incorrect in its assertion that negligent infliction of emotional distress is not recognized under Michigan law. In *Daley v. LaCroix*, 384 Mich. 4, 179 N.W.2d 390 (1970) (en banc) the Michigan Supreme

---

4. Selph testified that the notes did not make her feel "too threatened." (Selph Dep. at 52, attached to Def.'s Br.)

Court abolished the long-standing physical impact requirement for recovery based upon negligent infliction of emotional distress. *See* 384 Mich. at 9–12, 179 N.W.2d at 393–95. The court held

> that where a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, the plaintiff in a properly pleaded and proved action may recover in damages for such physical consequences to himself notwithstanding the absence of any physical impact upon plaintiff at the time of the mental shock.

*Id.* at 12–13, 179 N.W.2d at 395; *see also Maldonado v. National Acme Co.*, 73 F.3d 642, 645–47 (6th Cir.1996) (citing *Daley* and concluding that Michigan law recognizes "a claim for [emotional distress for] fearing for one's personal safety").[5]

■■■ The Court finds it unnecessary to address whether Selph has sufficiently alleged physical consequences of emotional distress sufficient to support an emotional distress claim because the admissible evidence in the record shows that there is no basis for concluding that Gottlieb's handled Selph's sexual harassment complaint in a negligent manner.

As discussed above, Gottlieb's had no knowledge of Jernigan's conduct prior to receiving Selph's complaint, and Jernigan did not engage in any behavior of a sexual nature between the date Selph made her complaint and the date Selph quit her job. Thus, even if Gottlieb's had taken no action whatsoever against Jernigan the day after Selph made her complaint,[6] Selph cannot show that Gottlieb's acted unreasonably. The crux of Selph's claim is that Gottlieb's was negligent because it failed to terminate Jernigan's employment or transfer him to another department in response to her complaint. (*See* Selph Dep. at 72 (stating that she did not want to work around Jernigan

any more), 91 (stating that Gottlieb's should have moved either Selph or Jernigan so they did not have to see each other), Pl.'s Resp. Br.Ex. A.) However, this Court has not found, nor has Selph cited, any case to support the proposition that an employer is limited in its handling of sexual harassment complaints to either transferring or terminating the harassing co-worker. On the contrary, "a harassment victim may not dictate an employer's action against a co-worker." *See Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 874 (6th Cir.1997), *cert. denied*, ⸺ U.S. ⸺, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). Because the Court finds that Gottlieb's was not negligent, it will grant Gottlieb's motion on Selph's negligent infliction of emotional distress claim.

### Conclusion

For the foregoing reasons, the Court will deny Gottlieb's motion for summary judgment on Count I of the complaint and grant Gottlieb's motion for summary judgment to Gottlieb's on Counts II through IV of the complaint.

---

5. A claim based upon fear of one's own safety exists apart from the other species of negligent infliction of emotional distress which is based upon the plaintiff's status as a bystander to an injury inflicted upon a third person as a result of the defendant's negligence. *See Nugent v. Bauermeister*, 195 Mich.App. 158, 162, 489 N.W.2d 148, 150 (1992). To succeed on a "bystander" claim, a plaintiff must be a member of the victim's immediate family, *see id.*, whereas there is

no such requirement in a "direct victim" emotional distress claim. *See Maldonado*, 73 F.3d at 647.

6. Selph worked only one full day—Friday, February 14—after making her complaint to Gottlieb's. Selph quit her job after returning to work early the following Monday.